

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-6678
Re: Transfers made in contempla-
tion of death within the mean-
ing of Article 7117, Revised
Civil Statutes of Texas, as
amended.

In your letter of July 5, 1945, you have requested
an opinion relative to certain transfers being made in con-
templation of death within the meaning of Article 7117, Re-
vised Civil Statutes of Texas, as amended, and with your
letter you have submitted an agreed statement of facts pre-
pared by the executors of the estate involved and a repre-
sentative from your office.

The agreed statement of facts submitted is attached
hereto and for the purposes hereof is epitomized. The de-
cedent, a resident of Dallas County, Texas, died at the age
of 77 years on February 18, 1944, from influenzal pneumonitis,
after having been ill for about five weeks. The decedent
left an estate valued for State Inheritance Tax purposes at
$721,511.77. During the year 1942, the decedent made certain
transfers amounting to $14,620.00 and consisting of (1) cash
presents to five relatives made on December 19, 1942, and
returned by the executors as Christmas presents, in the amount
of $8,000.00, (2) the cancellation in April, 1942, of a
$5,000.00 indebtedness of the decedent's nephew which was
evidenced by two promissory notes dated respectively Novem-
ber 21, 1940, and November 1, 1941, and (3) an allowance made
in monthly payments to a niece, who had received previous
financial assistance from the decedent, aggregating for the
year 1942, $1,620.00. Decedent was in good health at the
time these transfers were made, which fact is supported by
his physician's statement. Although several years prior to

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

1942, the decedent had disposed of his interest in a large mercantile corporation, he continued his business, civic, and philanthropic activities, going to his office each day and serving as an active member of the Board of Directors of two large corporations. During the year 1943, the only reported gift or transfer made by the decedent was that of a chapter house of the approximate value of $11,000.00, given to the American Red Cross. The decedent's average annual income during the years 1941, 1942 and 1943 was approximately $26,000.00. There is appended to the above statement of facts a gift schedule covering years prior to 1942 and a schedule in tabular form showing all transfers from 1930 to 1942. Such schedules are submitted as tending to show that the gifts made during the year 1942 by the decedent evidenced a prior and continuing practice of helping his relatives in need of financial assistance.

Article 7117, Revised Civil Statutes of Texas, as amended, describes property which shall be subject to inheritance taxes and in the last sentence of this article provision is made for imposing inheritance taxes under certain conditions on property transferred within two years prior to the death of the decedent. The analysis and interpretation of this last sentence in its relation to the above stated facts is the gravamen of this opinion. It provides:

> "Any transfer made by a grantor, vendor or donor, whether by deed, grant, sale or gift, shall, <u>unless shown to the contrary</u>, be deemed to have <u>been made in contemplation of death</u> and subject to the same tax as herein provided, if such transfer is made within two (2) years prior to the death of the grantor, vendor, or donor, <u>of a material part of his estate</u>, or if the transfer made within such period is in the nature of a final distribution of property and without adequate valuable consideration." (Emphasis added)

This provision creates a rebuttable presumption that transfers of a material part of the decedent's estate or transfers in the nature of a final distribution of property made within two years prior to his death, were made by the decedent in contemplation of death (see U. S. v. Wells, infra) and in this opinion it is necessary to determine whether

Honorable Ceorge H. Sheppard, Page 3

the gifts made by the decedent in 1942 in the amount of
$14,620.00 were (1) a material part of his estate or in
the nature of a final distribution, and (2) whether the
facts sufficiently overcome the presumption that they were
made in contemplation of death.

That these gifts made during 1942 were not in the
nature of a final distribution of the decedent's estate
seems too patent to require discussion (see infra), but
whether they constitute "a material part of his estate" is
not so obvious. Although this phrase, "a material part of
his estate", is used in the inheritance tax laws of many
states other than Texas as well as in the Internal Revenue
Code of the United States (Title 26, Section 811c, U.S.C.A.)
there has been little judicial consideration of the meaning
of the phrase, and no standards have been established by
which any particular case can be measured. Probably the
first judicial consideration of the meaning of this phrase
was by the Supreme Court of Wisconsin in In Re Ebeling's
Estate (172 N. W. 734, 4 A.L.R. 1519). In this case the
court had under consideration a Wisconsin Inheritance Tax
Act (Wisconsin Laws, 1913, ch. 643) which has a provision
similarly written and including this identical phrase. In
considering what constitutes a material part of the decedent's
estate, the court said:

"The next question is whether these gifts,
or any of them, constitute a material part of the
donor's estate. Obviously the law would be easier
of administration if it were more definite in fix-
ing the character or size of gifts to be deemed to
have been made in contemplation of death. Whether
that is practicable or possible we do not suggest.
The use of the word 'material' does not make the
law impossible of administration. Whether a gift
constitutes a material part of a donor's estate is
left a judicial question. As the Legislature has
not attempted to define with exactness what shall
be considered a material part of an estate, neither
shall we. That question must be left to be deter-
mined in each case as it arises. . . ."

And it was held that occasional gifts of $500.00 or $1,000.00
should not be deemed a material part of an estate valued at
$330,000.00. It was also held that more than $75,000.00 given

Honorable George H. Sheppard, Page 4

by the decedent in units of $5,000.00 and $10,000.00 within one year prior to his death did constitute a material part of the estate and was taxable.

One year later, this same court had this question again under consideration (In Re Stephenson's Estate, 177 N. W. 579). Citing the Ebeling case, the court reaffirmed that whether a gift is a material part of an estate is in each case a judicial question and further said: "While it must be admitted that the ratio the gift bears to the whole estate is a very important factor it is not per se the determining factor in each case. The size of the gift itself irrespective of the size of the estate has a direct bearing upon the answer. . . ."

The above cases (In Re Ebeling's Estate and In Re Stephenson's Estate) are cited and quoted from at length in Chase's Executrix v. Commonwealth (145 S. W. (2d) 58) in which the opinion was by the Court of Appeals of Kentucky in November 1940. In this latter case it is significant that in holding that $30,000.00 constituted a material part of the decedent's estate, consideration was given to the time within which the estate could be disposed of were the gifts continued. In this regard, the court said: "At that rate he would have disposed of all of his entire estate within a few years."

Whether the gifts in the present case were a material part of the decedent's estate is, therefore, a judicial question which must here be determined by weighing all of the facts and circumstances. It appears that such a determination should be governed principally by the following considerations:

1. Only one of the gifts comprising the total was in excess of $2,000.00.

2. The one item included in the total in excess of $2,000.00 was in fact a cancellation of a $5,000.00 indebtedness originally created in 1940.

3. One item included in the total in the amount of $1,620.00 was in fact comprised of nominal monthly payments made by the decedent to a niece.

4. The total of the gifts represents only 2% of the valuation of the decedent's estate at the time of his death.

5. The total of the gifts represents 53% of the decedent's income during the year in which they were made and did not actually reduce the net worth of his estate.

6. Approximately fifty years would be required to distribute an estate of more than $700,000.00 at the rate of $14,620.00 per year.

All of these considerations tend to the conclusion that the gifts in question were not a material part of the decedent's estate. Two of them are compelling. Inasmuch as the decedent's income during the year in which the gifts were made was almost twice as much as the gifts, it could be argued that not only were the gifts not a material part of the estate but that they were made from decedent's income during the year 1942 and were no part of the then existing estate at all. The decedent's estate was actually increased during that year. Further, had the decedent had no income whatever, almost an average lifetime would be required to dispose of his estate were gifts in the amount of these made annually.

There is next to consider whether, regardless of the amount involved, these gifts were made in "contemplation of death" within the meaning of Article 7117, Revised Civil Statutes of Texas, as amended. The presumption created by this article that gifts made within two years prior to the date of death shall be deemed to have been made in contemplation of death is rebuttable. (See United States v. Wells, infra). An inheritance tax is a "special tax" and the statutes imposing it should be construed liberally in favor of the taxpayer (Lewis v. O'Hare, 130 S. W. (2d) 379). In the absence of any Texas court decisions in point, the decisions of the United States Supreme Court should be followed in construing provisions of the Texas Inheritance Tax Laws which were, prior to their adoption in Texas, included in the Federal law. (See Blackmon v. Hanson, 169 S. W. (2d) 962.)

A leading case in which the United States Supreme Court considered the question of gifts or transfers made in contemplation of death as provided in the Internal Revenue Code (see Title 26, Section 811c, U.S.C.A.) is United States v. Wells, (283 U. S. 102), in which an extended discussion of the meaning of this phrase was written by the late Chief Justice Hughes. The following excerpts from this opinion are deemed to have a direct bearing on the instant case:

". . . While the interpretation of the phrase has not been uniform, there has been agreement upon

Honorable George H. Sheppard, Page 6

certain fundamental considerations. It is recog-
nized that the reference is not to the general
expectation of death which all entertain. It must
be a particular concern, giving rise to a definite
motive. . . . Transfers in contemplation of
death are included within the same category, for
the purpose of taxation, with transfers intended
to take effect at or after the death of the trans-
feror. The dominant purpose is to reach substi-
tutes for testamentary dispositions and thus to
prevent the evasion of the estate tax. As the
transfer may otherwise have all the indicia of a
valid gift inter vivos, the differentiating factor
must be found in the transferor's motive. Death
must be 'contemplated', that is, the motive which
induces the transfer must be of the sort which
leads to testamentary disposition. . . . The
natural and reasonable inference which may be
drawn from the fact that but a short period inter-
venes between the transfer and death, is recog-
nized by the statutory provision creating a pre-
sumption in the case of gifts within two years
prior to death. But this presumption, by the stat-
ute before us, is expressly stated to be a rebut-
table one, and the mere fact that death ensues
even shortly after the gift does not determine
absolutely that it is in contemplation of death.
. . .

"As the test, despite varying circumstances
is always to be found in motive, it cannot be said
that the determinative motive is lacking merely
because of the absence of a consciousness that
death is imminent. . . . Old age may give pre-
monitions and promptings independent of mortal
disease. Yet age in itself cannot be regarded as
furnishing a decisive test, for sound health and
purposes associated with life, rather than with
death, may motivate the transfer. The words 'in
contemplation of death' mean that the thought of
death is the impelling cause of the transfer. . . .

"If it is the thought of death, as a controlling
motive prompting the disposition of property, that

Honorable George H. Sheppard, Page 7

affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. . . . As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made 'for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision.' The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is, not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

". . . There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus give effect to the manifest purpose of the statute." (Emphasis added)  (For other cases see Milliken v. United States, 283 U. S. 15; Nichols v. Coolidge, 274 U. S. 531; Colorado National Bank v. Commission of Internal Revenue, 305 U. S. 23; Becker v. St. Louis Trust Company, 296 U. S. 48.)

Using the above excerpts as a guide and inquiring into the decedent's motives prompting the gifts in the present case, consideration has been given to the principal items comprising the gifts as set forth in the above agreed Statement of Facts.

Of the total gifts, $8,000.00 was given to five relatives on December 19, 1942, and is returned as Christmas presents. This item is made up of three gifts in the amount

Honorable George H. Sheppard, Page 8

of $2,000.00 each and two gifts in the amount of $1,000.00 each. Four of the five recipients thereof had previously received gifts or financial assistance from the decedent. Other relatives not included had, prior to 1942, been given varying amounts by the decedent. Although the record does not show that Christmas presents in amounts as substantial as these had prior to 1942 been given by the decedent, it has been noted that no Christmas presents whatever were made in the year following. At the time these gifts were made the decedent was in good health and the only consciousness of death which might be imputed to him would lie in "the premonitions and promptings" of old age. It appears, however, that these gifts were made through his "desire to recognize special needs and exigencies or to discharge moral obligations."

Of the total gifts, $5,000.00 was made to a nephew in April, 1942, through the cancellation of an indebtedness originally created in 1940. In 1936 the decedent had cancelled a larger indebtedness ($10,125.00) of still another nephew in the same manner. The original loan of $5,000.00 was made for the purpose of helping the nephew in establishing a business. It seems apparent therefore that this $5,000.00 item falls properly within the decedent's desire "to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own."

Of the total, $1,620.00 was given in monthly payments to a niece during the year 1942. The record shows that the decedent had been giving this niece various amounts during the five years preceding. The record also shows that this niece had lived in the decedent's home as a child and was left a widow about 1930 with two sons to maintain and educate. It seems apparent that the motive of this financial assistance was the decedent's desire to "discharge moral obligations".

On the whole, it appears that these were bona fide gifts inter vivos and that they were made for purposes "associated with life". The record reveals that the decedent recognized moral obligations to all of his relatives. In view of the decedent's wealth and income these gifts were not unusual. Certainly, they are not in a nature of "a testamentary disposition", and do not evidence any attempt on the part of the decedent to evade the inheritance tax.

The foregoing considered, it is concluded that
(1) the gifts in question were not a material part of the
decedent's estate within the meaning of Article 7117 of
Revised Civil Statutes of Texas, as amended, and (2) that
(regardless of the amount involved) the facts submitted are
sufficient to overcome the presumption that these gifts may
have been made in contemplation of death as provided by said
Article.

Accordingly, you are advised that it is the opinion
of this office that the gifts made by the decedent in the
amount of $14,620.00 during the year 1942 are not taxable
under the Inheritance Tax Laws of Texas.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Jackson Littleton
Jackson Littleton
Assistant

JL:mp

APPROVED JUL 19, 1945

FIRST ASSISTANT
ATTORNEY GENERAL